## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

Luis A. Gonzalez,                                  :
                                                   :
                        Plaintiff,                 :          **Hon. Joseph H. Rodriguez**
                                                   :
            v.                                     :          Civil Action No. 12-0517
                                                   :
Cape May County, et. al.                           :
                                                   :          **OPINION**
                        Defendants.                :
_____ ____ :

      These matters come before the Court on Motions for Summary Judgment, filed on behalf of Defendants County of Ocean, "County of Ocean Probation Department," "County of Ocean Department of Corrections," "County of Ocean Sheriff's Department," William Polhemus, Theodore J. Hutler, S. Metta and Paul Hoffman ("Ocean County Defendants") and on behalf of Defendants Cape May County, "Cape May County Sheriff's Office," Sheriff Gary G. Shaffer, Officer Perednas, and Officer Atkinson.  The Court has considered the written submissions of the parties and the arguments advanced at the hearing on these matters on February 18, 2015.  For the reasons expressed on the record that day and those set forth below, Defendants' motions are granted in part and denied in part.

### I.  Factual Background

      This case stems from the alleged false arrest and imprisonment of Plaintiff Luis Albert Gonzalez, which was carried out by Sherriff's Officers of Cape May and Ocean Counties pursuant to bench warrants identifying an individual named "Luis R. Gonzalez" who is not Plaintiff Luis Albert Gonzalez.  With a few exceptions, the facts are not in dispute.

On July 12, 2010, the Superior Court of New Jersey, Chancery Division, Ocean County issued two bench warrants for the arrest of a "Louis R Gonzalez" residing at 3700 New Jersey Avenue Unit D5, Wildwood, NJ.  Plaintiff alleges that the County of Ocean Sheriff's Department sent the two warrants to the Cape May County Sheriff's Department and ordered the arrest of "Louis R Gonzalez."  Am. Compl. ¶ 26.  On or about August 6, 2010, Defendants Perednas and Atkinson, both Officers employed by the Cape May County Sheriff's Department, arrested Plaintiff Louis Albert Gonzalez at his residence at 3700 New Jersey Avenue Unit D5, Wildwood, NJ.  Id.  at ¶ 19.

Plaintiff Louis Albert Gonzalez alleges and it was eventually confirmed that he was not the individual specified in the warrants.  Specifically, though Mr. Gonzalez's address and physical description match the individual identified in the warrants, his middle name, date of birth, and Social Security number differ from that of the individual identified in the warrants.  Id. at ¶ 28.  Both warrants provide that "Louis R Gonzalez" was born on April 1, 1965, and his Social Security number is XXX-XX-7396.  Id.  at ¶ 26.  Plaintiff Louis Albert Gonzalez's middle initial is "A," he was born on April 16, 1965, and his Social Security number is XXX-XX-4734.  Id. ¶¶ 29-33.  Plaintiff Louis Albert Gonzalez is not the father of the child that is subject of the warrants and that he has never fathered a child with the mother of the child that is the subject of the warrants.  Id. at ¶¶ 34, 35.

Following Mr. Gonzalez's arrest, Defendants Perednas and Atkinson of the Cape May County Sheriff's Department transferred custody and control of Mr. Gonzalez to Defendant S. Metta, an Officer employed by the Ocean County Sheriff's Department.  Id. at ¶¶ 13, 38.  When Mr. Gonzalez arrived at the Ocean County Department of

Corrections, Officer Paul Hoffman "booked" and "thorough[ly] searched" Mr. Gonzalez. Id. at ¶¶ 43-44. Mr. Gonzalez alleges that he was subjected to a "strip search" while in Defendants' custody. Id. at ¶ 37. When Mr. Gonzalez was "booked" at the Ocean County Department of Corrections, he had in his possession his Social Security card and his New Jersey driver's license, which states that his middle initial is "A" and his date of birth is April 16, 1965. Id. at ¶ 42.

Mr. Gonzalez alleges that while he was incarcerated in the Ocean County Correctional Facility, his family members drove to the facility to "attempt to have Plaintiff released from jail." Id. at ¶ 50. His family was told that he was arrested for failing to pay child support; in response, his family explained that Mr. Gonzalez did not owe child support and that "they" arrested and incarcerated the wrong person. Id. at ¶ 52.

According to his Amended Complaint, Mr. Gonzalez was "disabled" and "under consistent medical treatment for his medical conditions," which include "four herniated disc and nerve damage." Id. at ¶ 47. Mr. Gonzalez claims he suffered from these medical conditions at the time of his arrest and incarceration, takes several medications on a daily basis to treat the aforementioned conditions, and was denied his "necessary" medication and medical treatment while under arrest and incarceration. Id. at ¶¶ 47-49. Following his release, he "immediately went to the hospital to receive the care and treatment he was denied" while in custody. Id. at ¶ 54.

Mr. Gonzalez's Amended Complaint alleges the following causes of action against all of the Defendants. Plaintiff first alleges that the individual defendants violated his rights under 42 U.S.C. § 1983 when, acting under color of state law, they deprived him of

his right to be free from unreasonable search and seizure and right to be free from punishment without due process of law in violation of the Fourth, Eighth and Fourteenth Amendments as plead in Count I.  Count II alleges a violation of 42 U.S.C. § 1983 asserting that the Counties, County Departments, individual Sheriffs, and Warden Theodore J. Hutler failed to properly hire, train, and/or supervise which led to the depravation of Plaintiff's Constitutional rights.  In Count III, Plaintiff alleges a violation of 42 U.S.C. § 1983 against all defendants for deliberate indifference to Plaintiff's serious medical needs.  Counts IV and V respectively allege a violation of 42 U.S.C. § 1988 against all defendants and a claim of false arrest and/or detention against the individual defendants.  Counts VI and VII allege claims under the New Jersey State Constitution and New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et. seq. and a negligence claim against all defendants, respectively.  Count VIII pleads a claims for negligent hiring and supervision against the Counties, County Departments, Sheriffs, and Warden.  Finally, Count IX pleads a claim against any John Doe (1-99) individual or state/government agency that may have injured and/or damaged Plaintiff in one of the aforementioned manners.

## II. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Analysis

As a preliminary matter, Officers John Does (1-99) are dismissed pursuant to Fed. R. Civ. P. 21, which provides in pertinent part: "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." This rule permits the Court to exclude John Doe parties from an action when appropriate. Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (citing Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002); Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D.Pa. 1997) (holding "fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places. . . ,' however, . . . '[f]ictitious names must eventually be dismissed, if discovery yields no identities.'")).

Plaintiff filed this action on January 27, 2012. On December 3, 2013, the Magistrate Judge ordered completion of discovery by January 16, 2014. Given that the identity of the unnamed Defendants has not been found in the intervening three years since this suit was filed and/or in the year since completion of discovery, the interests of justice permit dropping those parties from the suit. Therefore, Officers John Doe (1-99) are dismissed from this action.

In addition, summary judgment is granted as to Defendants Ocean County Sheriff's Department, Ocean County Department of Corrections, and Cape May County Sheriff's Department.  These entities are divisions of the Counties of Ocean and Cape May and the claims against these entities merge with the claims against each separate County.  Generally, public entities that are not separate legal entities, but rather subunits of a local government or municipality, cannot be sued under § 1983.  See, e.g., Peppers v. Booker, Civ. No. 11-3207, 2012 WL 1806170 (D.N.J. May 17, 2012) (noting that "[i]n a Section 1983 claim, police departments may not be named defendants in conjunction with municipalities because police departments are merely instruments of municipalities); Open Inns, Ltd. v. Chester County Sheriff's Dept., 24 F.Supp.2d 410, 417 n.13 (E.D. Pa. 1998) (noting that "the Chester County Sheriff's Department is a sub-unit of Chester County which cannot be sued [under § 1983] because it is merely an arm of the local municipality, and thus is not a separate judicial entity).  Thus, insofar as Cape May's and Ocean's Sheriff's Departments and Ocean County's Department of Corrections are not separate legal entities, but divisions of the county, Plaintiff cannot sustain a separate §1983 claim against these Defendants and summary judgment is granted as to these claims entities.

Moreover, insofar as the "County of Ocean Probation Department" is not part of the County of Ocean but is a division of the Superior Court of New Jersey, it is a state agency.  States and their agencies are immune from suit under § 1983, as they are not "persons" under the statute.  See Will v. Michigan State Police, 491 U.S. 58, 109 (1989). The "County of Ocean Probation Department" is not a separate legal entity, but rather a

state agency, Mr. Gonzalez cannot sustain his § 1983 claims against this Defendant and, as a result, summary judgment is granted.

## A. Claims Under 42 U.S.C. § 1983 and Qualified Immunity

Plaintiff's constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws.  See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  By its own words, therefore, Section 1983 "does not . . . create substantive rights."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."  Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)).  Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the

Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.  <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 464 (3d Cir. 1989).

A similar analysis may be made regarding any claim under the New Jersey Civil Rights Act.  <u>See</u> <u>Armstrong v. Sherman</u>, No. 09 CV 716, 2010 WL 2483911, *5 (D.N.J. Jun. 4, 2010) ("[T]he language of the New Jersey Civil Rights Act, like the language of 42 U.S.C. § 1983, appears to grant a cause of action only to those persons whose rights have been personally violated.")[1]

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

---

[1] For this reason, the Court will not undertake separate analysis of Gonzalez' claims under the New Jersey Civil Rights Act. "This district has repeatedly interpreted NJCRA analogously to § 1983." <u>Pettit v. New Jersey</u>, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011).  "[W]hen pled together, [the NJCRA and § 1983] are analyzed under the same standard[.]" <u>Id.</u>, 2011 WL 1325614 at *4; <u>see also</u> <u>Hottenstein v. Sea Isle City</u>, 793 F.Supp.2d 688, 695 (D.N.J. 2011).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation omitted).  Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006).  "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted).  Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341 (1986).  See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.)  Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

Here, Plaintiff alleges a violation of his Fourth, Fourteenth, and Eighth Amendment rights and there is no dispute that the individual officers were acting under the color of state law.

### 1. Constitutional Claims[2]

Plaintiff makes claims of false arrest and false imprisonment against the individual officers. The Fourth Amendment prohibits seizures in the absence of probable cause. Orsatti v. New Jersey State Police, 71 F.3d. 480, 482 (3d Cir. 1995). Under the Fourth Amendment, a person is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 574 (1988) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  Seizure occurs only when a person is detained by "means intentionally applied" to terminate his freedom of movement by means of physical force or by show of authority.  Brower v. County of Inyo, 489 U.S. 593, 597-98 (1989).  No seizure occurs when a reasonable person would feel free to "disregard the police and go about his business" or where "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."  United States v. Kim, 27 F.3d 947, 951 (3d Cir. 1994) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)).

---

[2] Where an amendment provides explicit protection against a particular kind of government action, that amendment is the source of the Court's evaluation of a §1983 claim rather than the general rights granted by the Fourteenth Amendment.  County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).  Thus, allegations of false arrest or false imprisonment are evaluated under the Fourth Amendment rather than the Fourteenth Amendment.  See, e.g., United States v. Lanier, 520 U.S. 259, 272 (1997); Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).  To the extent Plaintiff makes a due process claim the Supreme Court has stated that the Constitution does not require "a sheriff executing an arrest warrant . . .  to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim." Baker v. McCollan, 443 U.S. 137, 145 (1979).

Under New Jersey common law, the tort of false imprisonment is defined as when an actor improperly constrains a person's freedom of movement by force or by threats of force communicated through conduct or words.  Maietta v. USPS, 749 F. Supp. 1344, 1366 (D.N.J. 1990).  New Jersey requires two elements for false imprisonment: (1) detention of the person against his or her will, and (2) a lack of proper legal authority or "legal justification."  Mesgleski v. Oraboni, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000).  Taking the facts in a light most favorable to the Plaintiff, Luis A. Gonzalez was seized and imprisoned under either of the above standards. The issue before the Court is whether that seizure and subsequent imprisonment violates the Fourth Amendment.

Plaintiff argues, relying on Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000), that because an erroneously issued warrant cannot satisfy the probable cause element of the Fourth Amendment, Defendants' mistaken belief that an arrest warrant had been issued for Plaintiff is immaterial and the arrest and subsequent imprisonment violate the Fourth Amendment.   This argument misconstrues the facts in Berg.

In Berg, the Third Circuit considered whether a hired constable was immune from suit because of an objectively reasonable belief in the validity of a warrant that identified a person for whom no probable cause existed for arrest.  Id. at 270-71.  Unlike here, no probable cause existed to arrest the intended subject of the warrant.  The fact that the wrong person was arrested did not matter because a warrant should have never issued for the intended subject.   "Because the government officials who issued the warrant [in Berg] did not have probable cause to arrest Berg, the arrest violated the Fourth Amendment."  Id. at 271.  However, the Court never reached the issue of qualified

immunity, instead remanding that issue for consideration by the district court. Id.  In so doing, the Third Circuit instructed that reliance on the warrant must be considered in light of other relevant circumstances, including "other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight." Id. (citations omitted).

Here, the warrants were issued by the Ocean County Superior Court.  Plaintiff offers no evidence to support that the warrants were facially invalid or erroneously issued, as in Berg. There is no evidence that the warrant was invalid as to the intended subject of the warrant, Luis R. Gonzalez.  This is a case about mistaken identity, not an invalid warrant.  However, there was no probable cause to arrest and/or imprison as to Plaintiff Luis A. Gonzalez.  As a result, the Court's inquiry turns to the issue of qualified immunity.

### a. __Qualified Immunity- Cape May Arresting Officers Perednas and Atkinson__

Summary judgment is denied as to Officers Perednas and Atkinson because there are questions of fact related to the reasonableness of their investigation as to whether Plaintiff was the subject of the warrant.  Officers Perednas and Atkinson had no part in the issuance of the warrants; they were assigned to execute the warrants.  On August 6, 2010, Officer Perednas and Officer Atkinson drove to the apartment of Luis A. Gonzalez to serve a warrant for Luis R. Gonzalez.  The officers had a warrant packet in their possession, which contained a photograph printout from the Motor Vehicle Commission.  As they approached the address, Officer Perednas made an initial identification of Plaintiff by comparing his facial features to those contained in the photograph of warrant packet.  See Perednas Dep., Ex. B., 15:9-22; 29:2-4.  The Officers

approached Mr. Gonzalez and asked him whether he was Luis Gonzalez; Plaintiff affirmed with a nod of his head. Id. at 15:17-22.  Officer Perednas showed Plaintiff the photograph in the warrant packet and asked Plaintiff "Is this you?" Id. at 23:1-12. Again, Plaintiff nodded in agreement.  Id.

Plaintiff produced his driver's license and gave it to Officer Perednas, who then compared the information on the license to the information contained on the warrant.  She noticed that while the driver's license number matched, the date of birth and middle initial of the name did not match listed on Plaintiff's license did not match the information listed on the warrant.  Id. at 24:11-14.  The officers proceeded to take Plaintiff into custody and were immediately approached by Plaintiff's daughter. Id. at 16:19- 17:2. The daughter explained that the arrest was a mistake because Plaintiff did not have any young children. Id. at 17:6-13.  As a result, Officer Perednas returned to her vehicle to double check the information using the mobile data terminal to access NCIC. Id. at 38:17-39.

Her search lead her to believe that Plaintiff was the correct target of the warrant. Id. In addition, Officer Perednas called her supervisor to discuss the mismatching information contained on the warrant and in the warrant packet, noting that the birth date and social security numbers listed did not match those identifiers for Plaintiff. Id. at 39:9-40:19.  The supervisor instructed her to proceed with the arrest of Plaintiff.  Id. at 40:20-23.  Plaintiff was arrested and taken to the Cape May County Jail. See Gonzalez Dep., Ex. E. 22:9-13.

Ordinarily, an officer can presume a warrant is supported by probable cause and thus valid if such a belief is objectively reasonable. Berg, 219 F.3d at 273.  The question

on summary judgment is whether the officers' erroneous arrest of Luis A. Gonzalez was objectively reasonable under the circumstances.  The Court finds that there are questions of fact as to the reasonableness of their actions which preclude cloaking Officers Perednas and Atkinson with qualified immunity at this time.

Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley, 475 U.S. at 343); see also Orsatti v. NJ State Police, 71 F.3d 480, 483 (3d Cir. 1995) (holding officers only lose qualified immunity where clear indicia that probable cause unreasonable).  Defendants rely on Ramirez v. United States of America, 81 F. Supp. 2d 532 (D.N.J. 2000) as instructive.

Felix Ramon Ramirez was a lawful permanent alien of the United States, who arrived in the United States on a flight originating from the Dominican Republic.  Upon arrival, he was detained by INS agents on the basis of an outstanding warrant for an individual named "Felix Ramos Ramirez."  Id. at 534.  As it turned out, the INS agents had the wrong person and Ramirez was detained for five hours.  Id.  Ramirez brought suit against, *inter alia*, the INS agents responsible for apprehending him.

The district court analyzed the claims and found that the INS officers were entitled to qualified immunity because they relied on a valid computer generated warrant and because the officers' mistaken belief as to the identity of Ramirez was objectively reasonable under the circumstances. Id. at 538.  The detaining officer in Ramirez also took additional steps to confirm that Ramirez was the individual listed in the warrant by calling Hudson County to confirm that the warrant was still active and by asking for additional information. Id.  In response to the inquiry, Hudson County sent a facsimile to the INS officer that included a copy of a fingerprint record and a photograph

15

of the 1988 arrestee "Felix R. Ramirez." Id.  Ramirez, who spoke some English, examined the photograph sent by Hudson County and agreed that he was the individual depicted therein.  Although the additional information sent by Hudson County was not connected to the intended subject of the warrant, the district court concluded that the officer "acted reasonably in her reliance upon the additional information sent by Hudson County to determine that plaintiff was the subject of the warrant." Id.  The district court further concluded that the INS officer's reliance on the computer record of the warrant, standing alone, was enough to cloak her in qualified immunity.  For these reasons, and relying heavily on the fact that the officer took additional steps to confirm that detention was appropriate, the district court concluded that the INS agents were entitled to qualified immunity. Id.

The record demonstrates that Perednas relied on the information on the warrant in concluding that Plaintiff was the subject of the warrant.  In addition, although ultimately erroneous, the information from the MVC further indicated that Plaintiff was the subject listed on the warrant.  However, the information on the warrant was in conflict with the information contained on the MVC record.  In addition, Plaintiff's family told the officers that Plaintiff's children were all emancipated and that he was not in arrears.  To her credit, Perednas was troubled by the conflicting information and the consternation from Plaintiff's family.  She then reached out to her supervisor to try and determine that arrest of Plaintiff was appropriate.

Plaintiff argues that the officers' actions were not objectively reasonable because, unlike Ramirez, the information listed on the warrant was in conflict with the additional information contained in the warrant packet.  The Court agrees.  Although Plaintiff lived at the address listed for the intended subject, had the same first and last name as

the intended subject, neither his date of birth nor social security number matched and his middle initial was wrong.  Moreover, the physical description was not a match and Plaintiff's family disputed that he was the subject of the warrant and, given the language barrier, Plaintiff was never able to explain the mistakes.  Officer Perednas' concern over the conflicting information caused her to question the identity of Plaintiff as the subject of the warrant.  Whether the nature of the steps she took to assure herself of the appropriateness of the arrest are objectively reasonable under these circumstances present a genuine issue of material fact.

Plaintiff's expert opined that Officer Perednas' additional inquiries into Plaintiff's true identity were inconsistent with established policy and procedure. Williams' Report, Ex. I, 6(A).  In this regard, Perednas' actions and the type of information she had available to her are ripe for consideration by a jury. See Berg, 219 F.2d 217 (qualified immunity analysis must consider "other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight." Id. (citations omitted)).  In addition, there is no reason why Officer Perednas could not take additional time to investigate Plaintiff's claims of mistaken identity; this was a failure to pay child support arrest with no exigent circumstances. See Reddy v. Evanson, 615 F.3d 197, 224 n.37 (3d Cir. 2010) (qualified immunity inappropriate where no split second decisions needed to be made.)

While mistakes will invariably happen, the Fourth Amendment guarantees that mistakes will only be made after proper diligence and regard for our notions of liberty and justice is accorded.  "Under qualified immunity, police officers are entitled to a certain amount of deference for decisions they make in the field [because they] must

make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (internal quotations omitted)).  Here, there are questions of fact related to the reasonableness of the officers' reliance on inconsistent information contained in the warrant, the actions they took to assure themselves of the identity of Plaintiff, and whether those actions are consistent with established policy and procedure.  "[S]ufficient probability, not certainty, is the touchstone of the Fourth Amendment[.]" Hill v. California, 401 U.S. 797, 803-04 (1971). Under this standard and viewing the facts in a light most favorable to the Plaintiff, the Court finds that Officers Perednas' and Atkinson's mistake as to the presence of probable cause may not have been objectively reasonable under the circumstances and they are not entitled to qualified immunity.   Summary judgment is denied.

### b. **Qualified Immunity- Ocean County Officers Metta and Hoffman**

The Ocean County Defendants argue that Plaintiff's arrest and imprisonment did not violate the Fourth Amendment because Cape May Officers Perednas and Atkinson had a reasonable belief on the existence of probable cause.  As explained, there are questions of fact surrounding the reasonableness of that belief that are tied to whether Perednas and Atkinson followed identification protocol in arriving at their conclusion that Plaintiff was the intended subject of the warrant.  Even if Perednas and Atkinson are entitled to qualified immunity, on this record, such immunity cannot extend to Ocean County Officer Metta at this time.

There is no evidence in the record suggesting that Metta was ever aware of the circumstances confronting the Cape May Officers and/or the existence of probable cause to arrest Plaintiff.   Metta agrees that he did not show the warrant to anyone at the Cape

May County Jail and Metta cannot confirm that his partner produced the warrant to the jail.  Metta Dep., Ex. F. 16:5-15.  In addition, Metta never questioned Plaintiff nor endeavored to confirm that Plaintiff was indeed the target of the warrant, or even the correct transportee.  Id. at 18:5-11.  Metta does not know if his partner spoke to Plaintiff.  Id. at 18:12-19:13.  Metta agrees that he did not attempt to positively identify Plaintiff as the person listed on the warrant and that he relied on Cape May's assurance that Plaintiff was the "guy."  Id. at 26:14-25; 27:11-14.

Even though Officer Metta never checked Plaintiff's name, birth date, and Social Security number against information specified in the warrant, Ocean County argues that Mr. Gonzalez's arrest and subsequent incarceration were valid because the Cape May Officers had probable cause in light of the objectively reasonable mistake as to Plaintiff's identity.  For the same reasons stated as the Cape May Officers Perednas and Atkinson, there are questions of fact related to whether probable cause existed.  In addition, because Officer Metta never spoke to anyone at the Cape May County Jail and/or Plaintiff, there are questions of fact related to whether that Officer Metta acted reasonably and whether he had good faith belief that they were justified in transporting and detaining Mr. Gonzalez.

Likewise, summary judgment is denied as to Officer Hoffman. The intake procedures in effect at the time that Plaintiff was "booked" or processed into the Ocean County Jail required Hoffman to ask Plaintiff for certain information. See Ocean Co. Dep. of Corrections Policies and Procedures, Ex. K.  Hoffman does not recall his interaction with Plaintiff because he processes nearly two thousand persons a year.  See Hoffman Dep., Ex. H., 13:11-25.  As a result, Hoffman cannot recall if he had difficulty

communicating with Plaintiff and admits that he did not use the "language hotline"[3] for assistance. Id. at 17:13-25. Hoffman's lack of recall is understandable given the amount of time that has passed and the number of people Hoffman processes. Also complicating matters is Plaintiff's admitted silence during the booking process. Plaintiff never indicated to Hoffman that he was not the man identified in the warrant.

Viewing the facts in a light favorable to Plaintiff, there are questions of fact related to whether Hoffman ever properly processed Plaintiff. Hoffman agrees that he rarely used a person's driver's license to attempt to identify a detainee. "We don't really use it [. . . ] because there are so many different I.D.'s out there[.]" Hoffman Dep., Ex. H. 29:23-25. In addition, Hoffman agreed that he routinely ran a detainees' social security number, date of birth and name during processing. Id. at 34:14-18. Because Plaintiff cannot speak English, because Hoffman did not use the language hotline for assistance, and because running Plaintiff's identifiers through the database may likely have alerted Hoffman to a discrepancy during processing, a reasonable juror could conclude that Hoffman never asked Plaintiff about his identification. This is problematic for several reasons. First, to the extent Hoffman simply relied on the chain of custody to furnish probable cause, he never confirmed Plaintiff's identity as being consistent with the processing papers. Second, by failing to follow Ocean County's Procedures for intake, a reasonable jury could conclude that Hoffman's actions were not reasonable and in bad faith. As a result, Hoffman is not entitled to qualified immunity and summary judgment is denied.

---

[3] The language hotline provides assistance, in the form of a translator, to the booking officer when the officer is attempting to communicate with a person who does not speak English. Hoffman has only used the language hotline once in his entire career. Hoffman Dep., Ex. H. 17:21-24.

### c.  **Claims against the Counties and Supervisors**

Plaintiff alleges claims of negligent hiring, failure to train, and unconstitutional policy and/or custom pursuant to Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978) against Cape May County, Cape May County Sheriff Gary G. Shaffer,  Ocean County Sheriff William L. Polhemus and Ocean County Warden Theodore J. Hutler. Plaintiff failed to respond to Defendants' arguments regarding negligent hiring.  As a result, the Court will grant summary judgment as unopposed as to that claim. For the reasons that follow, summary judgment is denied in part.

### 1.  **Monell Claims**

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory.  Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Policy or custom may be established in two ways. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (citations omitted). Custom requires proof of knowledge and acquiescence by the decisionmaker. McTernan v. City of York, PA, 564 F.3d 636, 657 -658 (3d Cir.

2009). Moreover, supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (citations omitted).  Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).  Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom.  Canton v. Harris, 489 U.S. 378, 388 (1989).  "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997). Finally, to prevail on a failure to train, discipline or control claim, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citations omitted).

The Supreme Court notes that in "limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).  To sustain a failure-to-train claim under § 1983, a plaintiff "must (1) identify the deficiency; (2) prove that the deficiency

caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality." Lapella v. City of Atlantic City, 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012) (citing Malignaggi v. County of Gloucester, 855 F.Supp. 74, 77 (D.N.J. 1994)). Only when a plaintiff demonstrates deliberate indifference to the rights of persons with whom the untrained employees come into contact "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Connick, 131 S.Ct at 1359-60 (internal citation omitted).

Deliberate indifference is "a stringent standard of fault" that requires proof that a municipal actor disregarded a known or obvious consequence. Id. (citing Board of Cty Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997)). Thus, for purposes of a failure to train claim, it is "ordinarily necessary" for a plaintiff to show "[a] pattern of similar constitutional violations by untrained employees." Connick, 131 S.Ct. at 1360 (internal citation omitted). The Third Circuit has noted that:

> [A] municipality's deliberately indifferent failure to train is not established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct.

Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing City of Canton v. Ohio, 489 U.S. 378, 391 (1989) (emphasis in original)). A "single-incident" theory of liability can proceed only upon demonstration that the constitutional violation was the "obvious" consequence of inadequate training. Connick, 131 S.Ct. at 1360–61 (citations omitted); see also, City of Canton, 489 U.S. at 390, n. 10. However, such a

"single incident" theory of liability only arises "in a narrow range of circumstances." Id. at 1361.

### a.  Claims Against Ocean County Defendants

Summary judgment is denied under both a failure to train theory and policy/ custom theory.  There are genuine issues of material fact related to whether Ocean County acquiesced to an official custom of discouraging the use of a person's driver's license and social security cards as a means to verify identity for non-English speaking people. Ocean County Lieutenant Haberbush's testified that "a lot of Spanish-speaking people have fake driver's licenses" and that makes it less reliable for "certain classes of people." Haberbush Dep., Ex. I, 36:19-37:23, 38:4-20.  Officer Metta also testified that fake driver's licenses are a concern, rendering that form of identification unreliable. Metta Dep., Ex. F, 29:20-30:1.  In addition, Plaintiff's export report details the practice and its impact.  As a result, reasonable jurors could differ as to the existence of a practice that is so widespread and well-settled that it constitutes a standard operating procedure of Ocean County, through its Corrections and Sheriff's Departments.

Such a custom could be the cause of and the moving force behind Plaintiff's constitutional claims.  If anyone at Ocean County had reviewed Plaintiff's identification and/or questioned him about his identity, the violation may not have occurred.

Likewise, summary judgment is denied a to Plaintiff's failure to train claim. Plaintiff's expert notes, and the Ocean County Defendants agree, that Ocean County did not have a policy for the identification, arrest, and/or transportation of non-English speaking persons during the relevant period of time.  See Williams Report, Ex. L; Metta Dep., Ex. F. 33:14-25; Hoffman Dep., Ex. H. 19:14-24, Haberbush Dep., Ex. I. 53:1-3.

Failure to adopt a policy can result in liability. <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 585 (3d Cir. 2003).  Given Hoffman's testimony that he only used the language hotline once and that he did not use licenses or social security cards for identification purposes, and because Hoffman was not reprimanded for the mistaken detention of Plaintiff, a jury could reasonably conclude that Defendant Hutler ratified Hoffman's customs or inactions.

Finally, there are questions of fact related to whether Ocean County was deliberately indifferent to the consequences of its actions/inactions.  Although Plaintiff does not identify a pattern, there are questions of fact related to the obviousness of the conseqeunces under a "single-incident" theory of liability. <u>Connick</u>, 131 S.Ct. at 1360–61 (citations omitted); <u>see also</u>, <u>City of Canton</u>, 489 U.S. at 390, n. 10.  For these reasons, summary judgment is denied.

### b.  <u>Claims Against Cape May County Defendants</u>

For substantially the same reasons identified with respect to Ocean County, summary judgment is denied as to Defendants Cape May County and Gary Schaffer. Mr. Gonzalez argues that Cape May County and Sheriff Shaffer are liable under § 1983 on a failure-to-train theory, as they have demonstrated deliberate indifference to his constitutional rights.  Gonzalez points to the deposition of Sheriff Schaffer in which he states that Perednas and Atkinson followed the correct procedures in arresting Plaintiff. Because Perednas and Atkinson did not conduct a background check before they arrested Plaintiff, Gonzalez alleges a claim of failure to train.  In addition, there is no policy, or there is an inadequate policy with respect to the arrest of non-English speaking individuals. Plaintiff's expert opines that Cape May's policy does not meet

nationally accepted standards. See Ex. I, at 16:3.  In addition, Cape May lacks operational policies that mandate appropriate due diligence procedures of officer making arrests. Id.

Lieutenant Scott Knoedler, of the Cape May County Sheriff's Department, testified that, at the time of Plaintiff's arrest, there was no policy in place that required verification of a subject's identity prior to making an arrest based upon a warrant. Exhibit L, 34:3-9.  Officer Perednas agreed that no policy existed on the procedures for confirming the identification of a subject of a warrant.  Perednas Dep., Ex. G., 37:12-18. Officer Atkinson was not aware whether such a policy existed. Atkinson Dep., Ex. M., 26:3-6.  Likewise, Cape May lacked policies and procedures for the arrest of non-English speaking individuals.  Williams' Report, Ex. I, 11:3; Shaffer Dep., Ex. J., 14-15, Perednas Dep., Ex. G. 35:14-18, Atkinson Dep., Ex. M., 24:19-23.

Given the evidence in the record, a reasonable jury could find that Cape May County failed to train its officers to investigate and arrest non-English speaking individuals and that the failure to train caused Plaintiff's alleged constitutional violations.  Although evidence of deliberate indifference is thin, the failure to identify the need for the policy and Plaintiff's expert report which claims Cape May failed to implement State mandated in-service training on the use of force and the identification of non-English speaking persons, deliberate indifference may be inferred.  Summary judgment is denied on the failure to train claim.

### 2.  Inadequate Medical Care Claim Against Ocean County

Summary judgment is granted as to Plaintiff's claim of failure to provide medical treatment.  To succeed under the "deliberate indifference" standard, the plaintiff must

prove:  (1) that his medical needs were "objectively serious" and (2) that the defendants exhibited "deliberate indifference" to Plaintiff's medical needs.  Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention" or "where the denial of treatment would result in the unnecessary and wanton infliction of pain or a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal citations omitted).

The Amended Complaint alleges that the Ocean County Defendants "deliberately, intentionally, wantonly and/or recklessly" failed to provide him with necessary medical care while he was in custody.  Am Compl. at ¶ 63.  According to his Amended Complaint, Mr. Gonzalez suffers from four herniated disc, "among other conditions," for which he receives "consistent medical treatment" and regularly takes Losibra, Atenolol, Norvasc, Prozec, Oxycondone, Zolpidem Tartrate, Cycloprine, and Fentanyl Transdermal.  Id.  at ¶¶ 47-48.  Mr. Gonzalez was denied this medical treatment while he was arrested and incarcerated.  Id.  at 49.

In his brief in opposition to the motions for summary judgment, Plaintiff fails to cite to any records or testimony to support his claim.  Instead, he generally references Complaint and the First Amended Complaint.  Such general references are insufficient to survive summary judgment.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga

v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Rather, to establish the presence of a genuine issue of material fact, Fed. R. Civ. P. 56 (c)(1)(A) requires that the non-moving party "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A). Because Plaintiff fails to meet his burden in this regard, summary judgment is granted as to this claim.

## IV. Conclusion

For the reasons stated herein, summary judgment is granted as to John Does (1-99), County of Ocean Probation Department, Ocean County Sheriff's Department, Ocean County Department of Corrections, and Cape May County Sheriff's Department. Summary judgment is also granted as to Plaintiff's claim of negligent hiring and claim for inadequate medical care.  Summary judgment is denied as to the remaining claims.

An appropriate Order shall issue.

Dated: March 31, 2015

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez
UNITED STATES DISTRICT JUDGE